# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**BETH RICH,**

    Plaintiff,

v.                                                                                                                                          **CIVIL ACTION NO. 3:12-CV-92**
                                                                                                                                           **(JUDGE GROH)**

**LIFE INSURANCE COMPANY
OF NORTH AMERICA, a foreign
corporation,**

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION TO DISMISS

Pending before this Court is Defendant Life Insurance Company of North America's Motion to Dismiss [Doc. 26], filed on November 8, 2012. This motion has since been fully briefed and is now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the Defendant's motion should be **GRANTED IN PART**, and **DENIED IN PART**.

## BACKGROUND

### I. Factual Allegations

In her Amended Complaint, the Plaintiff alleges that at all times relevant she was insured through a disability insurance policy issued by Defendant Life Insurance Company of North America to the Morgan County, West Virginia Board of Education. The Plaintiff alleges that in 2009 she became disabled and filed a claim for long term disability benefits under the disability policy issued by LINA. The Plaintiff began receiving a monthly benefit

from the Defendant in the amount of $1,393.00, with an effective disability date of April 23, 2009.

The Plaintiff alleges that on or about January 10, 2011, the Defendant informed the Plaintiff that it was conducting a review to determine if she would remain eligible for benefits. The Plaintiff alleges that the Defendant initiated this review with the intent to deny the Plaintiff future benefits under her long term disability policy. According to the Plaintiff, the Defendant hired a company called MES Solutions which advertises itself as providing medical reports to assist disability insurers in the management of long term disability claims. MES Solutions, in turn, hired a separate corporation, Medical Advisory Services, Inc., in order to medically evaluate the Plaintiff.

The Plaintiff alleges that MES Solutions scheduled her for a medical evaluation on June 3, 2011, which was conducted by a staff physician employed by Medical Advisory Services, Inc. On June 10, 2011, the Plaintiff alleges the Defendant notified her that she was no longer disabled based on the June 3, 2011 medical evaluation. The Plaintiff alleges that she appealed this decision, but her appeal was denied by the Defendant on September 13, 2011.

The Plaintiff alleges that pursuant to its general business practice, the Defendant retained a company called Advantage 2000 Consultants to act as Plaintiff's Social Security disability advocate to obtain Social Security benefits which would then be used as an offset to the benefits paid by Defendant. The Plaintiff alleges that a Social Security ALJ ruled on November 4, 2011, that the Plaintiff had been disabled since April 23, 2009. Specifically, the Plaintiff alleges that the ALJ found: (1) the Plaintiff suffered from rheumatoid arthritis, fibromyalgia, degenerative disk disease of the lumbar spine, and gastroesophagitis; (2) the

Plaintiff "could not sustain sufficient concentration, persistence or pace to do even simple routine tasks on a regular and continuing basis;" (3) the Plaintiff "could not sustain sedentary work because of the pain and swelling associated with her rheumatoid arthritis;" (4) the Plaintiff's "acquired job skills do not transfer to other occupations within the residual functional capacity as defined by law;" and (5) "there are no jobs that exist in significant numbers in the national economy that [the Plaintiff] can perform."

The Plaintiff alleges that the Defendant has a contract with Advantage 2000 Consultants whereby Advantage 2000 Consultants both provides Social Security representative services to people insured through the Defendant's long term disability insurance policies and provides what are termed "Vendor Coordinated Overpayment Reduction" ("COR") services to the Defendant. COR services allegedly consist of "arranging for the re-payment of any incurred overpayment for [the Defendant's] claimants who may be eligible for Social Security Disability Income ("SSDI") Benefits." The Plaintiff alleges that Advantage 2000 Consultants is paid a flat fee for its Social Security representation services, and an undisclosed contingency fee constituting a percentage of the actual amount of Social Security overpayments recovered as a result of Advantage 2000 Consultants' COR services to the Defendant. The Plaintiff further alleges that Advantage 2000 Consultants is paid additional commissions when the company hits specific weekly, quarterly, and annual benchmarks in recoveries. The Plaintiff alleges that the Defendant uses the findings of the Social Security Administration in favor of disability claimants to recoup and offset payments made to its policyholders.

The Plaintiff alleges that the Defendant, as a course of practice and conduct, began the process of terminating its disability payments to the Plaintiff by demanding proof of

disability to perform the duties of any occupation after the Social Security Administration's September 30, 2010 request for hearing, but before the Social Security Administration's decision in the Plaintiff's case was issued on November 4, 2011. The Plaintiff alleges that nothing material changed with regard to her disabling condition between the time of the Defendant's June 10, 2011 denial of benefits and the ALJ's November 4, 2011 decision awarding Social Security benefits to the Plaintiff. The Plaintiff alleges that the Defendant intentionally disregarded the medical evidence which was obtained through Advantage 2000 Consultants in order to obtain the benefit of Social Security disability benefits for themselves while having already terminated the Plaintiff's benefits on June 10, 2011.

## II. **Procedural History**

On August 20, 2012, the Plaintiff filed a Complaint in the Circuit Court of Berkeley County, West Virginia, against Defendants Cigna Corporation ("Cigna") and LINA. The Defendants removed the instant action to this Court on September 10, 2012. On September 27, 2012, the Defendants filed a Motion to Dismiss. On October 15, 2012, the Plaintiff filed an Amended Complaint, alleging causes of action for breach of contract (Count I), breach of first party fiduciary duty (Count II), common law bad faith (Count III), unfair trade practices pursuant to W. Va. Code §33-11-1, et seq. (Count IV), violation of statutory consumer protection (Count V), and seeking declaratory judgment as to the Plaintiff's rights under the applicable insurance policy (Count VI). As relief, the Plaintiff prayed for compensatory damages, punitive damages, attorney's fees, costs, and interest.

On November 8, 2012, the Defendants filed a Motion to Dismiss the Plaintiff's Amended Complaint, arguing: (1) that this Court lacked personal jurisdiction over Defendant Cigna; (2) that Count II of the Amended Complaint, alleging breach of first party

fiduciary duty, should be dismissed; (3) that Count IV of the Amended Complaint, alleging unfair trade practices pursuant to W. Va. Code §33-1-1, et seq., should be dismissed; (4) that Count V of the Amended Complaint, alleging violation of statutory consumer protection, should be dismissed; and (6) that the Plaintiff's prayer for punitive damages should be dismissed.

On November 27, 2012, the Plaintiff filed a Response to the Defendants' Motion to Dismiss. Also on November 27, 2012, the parties stipulated to the dismissal of Cigna as a party defendant to this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). On November 28, 2012, the Plaintiff voluntarily dismissed Counts II and V of the Amended Complaint pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). On December 7, 2012, Defendant LINA filed a Reply in support of its motion to dismiss.

Thus, the only remaining motions before the Court are Defendant LINA's motion to dismiss Count IV of the Plaintiff's Amended Complaint, and Defendant LINA's motion to dismiss the Plaintiff's prayer for punitive damages.

## DISCUSSION

**I.  Jurisdiction**

Pursuant to 28 U.S.C. §1332, district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

The Plaintiff is a resident of the State of West Virginia. Defendant LINA is a Pennsylvania corporation with its primary place of business located in Philadelphia, Pennsylvania. With regard to the amount in controversy, the Defendant asserts that the value of the benefits at issue in and of themselves exceed $75,000.00, without even

considering the additional compensatory and punitive damages being sought by the Plaintiff. Accordingly, diversity jurisdiction exists.

## II. **Applicable Standard**

In analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. **Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp.,** 910 F.2d 139, 143 (4th Cir.1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" **Id.** at 143-44 (quoting **Johnson v. Mueller,** 415 F.2d 354, 355 (4th Cir.1969)); see also **Rogers v. Jefferson-Pilot Life Ins. Co.,** 883 F.2d 324, 325 (4th Cir.1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1356, at 294 (2d ed.1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. **Id.** §1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). *Id.* §1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. *Rogers*, 883 F.2d at 325. A dismissal under Rule 12(b)(6) is granted only in cases in which the facts as alleged in the complaint clearly demonstrate that the plaintiff does not state a claim and is not entitled to relief under the law. 5A Wright & Miller, *supra* §1357, at 344-45.

### III. <u>Analysis</u>

#### A. **Defendant's Motion to Dismiss Count IV of the Amended Complaint**

Count IV of the Plaintiff's Amended Complaint alleges statutory unfair claims practices in the processing and administration of the Plaintiff's disability claim, in violation of the West Virginia Unfair Trade Practices Act ("UTPA"), W. Va. Code §33-11-1, et seq.[1] Pursuant to W. Va. Code §33-11-1, "[t]he purpose of this article is to regulate trade practices in the business of insurance . . . by defining . . . all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."

W. Va. Code §33-11-4(2) provides that:

> No person shall make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly, to be made published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of

---

[1] To the extent that this case involves an insurance contract entered into in West Virginia, it will require application of the substantive law of the State of West Virginia. *See **M & S Partners v. Scottsdale Ins. Co.***, 277 Fed. Appx. 286, 289 (4th Cir. 2008) ("West Virginia courts generally use *lex loci delicti* to resolve choice of law conflicts . . . .").

insurance or with respect to any person in the conduct of his or her insurance business, which is untrue, deceptive or misleading.

W. Va. Code §33-11-4(9) provides that:

No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(l) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(o) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss: Provided, That should benefits due the claimant be assigned, notice to the claimant shall not be required: Provided, however, That should the benefits be payable directly to the claimant, notice to the health care provider shall not be required. If the insurer needs more time to investigate the claim, it shall so notify the first party claimant in writing within fifteen calendar days from the date of the initial notification and every thirty calendar days, thereafter; but in no instance shall a claim remain unsettled and unpaid for more than ninety calendar days from the first party claimant's filing of the proof of loss unless, as determined by the insurance commissioner: (1) There is a legitimate dispute as to coverage, liability or damages; or (2) the claimant has fraudulently caused or contributed to the loss. In the event that the insurer fails to

> pay the claim in full within ninety calendar days from the claimant's filing of the proof of loss, except for exemptions provided above, there shall be assessed against the insurer and paid to the insured a penalty which will be in addition to the amount of the claim and assessed as interest on the claim at the then current prime rate plus one percent. Any penalty paid by an insurer pursuant to this section shall not be a consideration in any rate filing made by the insurer.

The Plaintiff specifically alleges that the Defendant: (1) failed to affirm coverage of long term disability benefits after proof of disability as determined by the Social Security Administration based upon information obtained through Advantage 2000 Consultants; (2) failed to consult with health care professionals who had appropriate training or experience with regard to the disabling conditions of the Plaintiff; (3) failed to consider the course and nature of the Plaintiff's disease process prior to the denial of Plaintiff's long term disability benefits; (4) failed to attempt in good faith to effectuate prompt, fair and equitable resolution of the Plaintiff's claims in which liability was clear; (5) compelled Plaintiff to instigate litigation to recover amounts due her pursuant to her long term disability policy; (6) refused to pay claims without first conducting a reasonable and timely investigation based upon all available information; and (7) made statements containing assertions and/or representations that are untrue, deceptive or misleading.

The Defendant argues that in order to maintain a cause of action for violation of these statutory prohibitions, a plaintiff must show more than a single isolated violation in the processing of a single claim. The Plaintiff argues that she has alleged separate, discrete acts or omissions on the part of LINA sufficient to infer that LINA's misconduct constituted a general business practice under West Virginia law.

The Supreme Court of Appeals of West Virginia has determined that an implied

private cause of action exists for a violation by an insurance company of the unfair settlement practice provisions of W. Va. Code §33-11-4(9). *See* ***Stonewall Jackson Mem. Hosp. Co. v. American United Life Ins. Co.***, 525 S.E.2d 649, 656 (W. Va. 1999) (citing Syl. Pt. 2, ***Jenkins v. J.C. Penney Casualty Ins. Co.***, 280 S.E.2d 252 (W. Va. 1981)). "To bring a claim under the UTPA, a plaintiff must show '[m]ore than a single isolated violation of W. Va. Code §33-11-4(9).'" However, "'multiple violations of W. Va. Code §33-11-4(9), occurring in the same claim [are] sufficient.'" ***United Bankshares, Inc. v. St. Paul Mercury Ins. Co.***, 2010 WL 4630212 at *6 (S.D. W. Va. Nov. 4, 2010) (quoting ***Dodrill v. Nationwide Mut. Ins. Co.***, 491 S.E.2d 1, 12 (W. Va. 1996)). In ***Dodrill***, the West Virginia Supreme Court of Appeals held that:

> More than a single isolated violation of W. Va. Code §33-11-4(9), must be shown in order to meet the statutory requirement of an indication of "a general business practice," which requirement must be shown in order to maintain the statutory implied cause of action.

***Dodrill***, 491 S.E.2d at Syl. Pt. 3 (citing Syl. Pt. 3, ***Jenkins v. J.C. Penney Casualty Ins. Co.***, 280 S.E.2d 252 (W. Va. 1981)).

> To maintain a private action based upon alleged violations of W. Va. Code §33-11-4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code §33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

*Id.* at Syl. Pt. 4.

In *Dodrill*, the West Virginia Supreme Court of Appeals held that a defendant insurance company's repeated failure to settle a plaintiff's claim, despite repeated contact with the plaintiff after liability had become reasonably clear, supported a jury verdict that the insurance company's actions were a general business practice in violation of the UTPA. *Id.* at 6.

In *United Bankshares*, the United States District Court for the Southern District of West Virginia found that pursuant to *Dodrill*, plaintiffs' allegations that defendant insurance companies had wrongfully denied the plaintiffs' claims, failed to issue a timely coverage decision, and refused to settle the plaintiffs' claims brought under three separate insuring clauses in a bond, were sufficient to constitute "separate, discrete acts or omissions, each of which constitute violations of different sub-paragraphs of W. Va. Code §33-11-4(9)." *United Bankshares*, 2010 WL 4630212 at *7. Thus, the plaintiffs' allegations were "factually sufficient to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" and were thus sufficient to survive a 12(b)(6) motion by the defendants. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Similarly, the Plaintiff in the instant case alleges that the Defendant violated multiple subsections of W. Va. Code §33-11-4(9), as well as W. Va. Code §33-11-4(2). Specifically, the Plaintiff alleges seven different violations of W. Va. Code §§33-11-4(2) and 33-11-4(9) occurring within the settlement of a single insurance claim. Accepting the Plaintiff's allegations as true, as this Court must when considering a Rule 12(b)(6) motion, the Plaintiff has alleged separate, discrete acts and omissions in the subject claim settlement

sufficient to survive a motion to dismiss. The Defendant's motion to dismiss Count IV of the Amended Complaint is accordingly **DENIED**.

B. **Defendant's Motion to Dismiss Plaintiff's Prayer for Punitive Damages**

The Defendant argues that the Plaintiff has failed to meet the requisite "actual malice" standard in order to assert a claim for punitive damages in this action, and that the Plaintiff's prayer for punitive damages should accordingly be denied. The Plaintiff argues that the facts she has alleged, accepted as true and viewed in a light most favorable to the Plaintiff, show misconduct on the part of the Defendant from which can be inferred a malicious attempt to defraud.

In **Hayseeds, Inc. v. State Farm Fire & Cas.**, 352 S.E.2d 73 (W. Va. 1986), the West Virginia Supreme Court of Appeals held that "whenever a policyholder substantially prevails against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." *Id.* at Syl. Pt. 1. However, "punitive damages for failure to settle [an insurance claim] shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process." *Id.* at 80. "Actual malice" means that "the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." *Id.* at 80-81. "Unless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury." *Id.* at 81. This policy is "intend[ed] . . . to be a bright line standard, highly susceptible

to summary judgment for the defendant . . . ." **Id.**

In **Hayseeds**, the West Virginia Supreme Court of Appeals reversed a lower court's award of punitive damages, holding that "[a]lthough there was some evidence that the company began its investigation with a preconceived disposition to deny the claim, that disposition did not rise to the level of malice that we have . . . articulated." **Id.** at 81. See also **Burkett v. AIG Claim Services, Inc.**, 2007 WL 2059238 (N.D. W. Va. July 13, 2007) (punitive damages are generally unavailable in a **Hayseeds** action unless defendant's conduct constitutes an independent, intentional tort (citing **Warden v. Bank of Mingo**, 341 S.E.2d 679 (W. Va. 1985); **Hurxthal v. St. Lawrence Boom & Lumber Co.**, 44 S.E. 520 (W. Va. 1903); **Horn v. Bowen**, 67 S.E.2d 737 (W. Va. 1951); **Short v. Grange Mutual Casualty Co.**, 307 F.Supp. 519 (S.D. W. Va. 1969); **Cotton v. Otis Elevator Co.**, 627 F.Supp. 519 (S.D. W. Va. 1986)).

In the case *sub judice*, the Plaintiff alleges that the Defendant, as a course of practice and conduct, terminated her disability benefits and then sought repayment of alleged overpayments after the Plaintiff began receiving Social Security disability benefits. However, the Plaintiff has not produced any evidence that the Defendant willfully, maliciously, and/or intentionally denied her claim. The subject insurance policy provides that "[t]he Insurance Company will require proof of earnings and continued Disability," and further provides that:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her *Regular Occupation*; and

2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1. unable to perform the material duties of *any* occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and

2. unable to earn 80% or more of his or her Indexed Earnings.

*See* Policy, Ex. A to Defendant's Motion to Dismiss, p. 2 [Doc. 26-1] (emphasis added).

In line with this policy, the Defendant paid the Plaintiff benefits for two years, then reevaluated her and denied her claim. Viewing the factual allegations in the light most favorable to the Plaintiff, the Defendant's denial of the Plaintiff's claim was, at most, negligent and/or conducted in poor judgment. Plaintiff's factual allegations fall far short of supporting a claim that the Defendant acted with "actual malice." Therefore, the Defendant's motion to dismiss the Plaintiff's prayer for punitive damages is hereby **GRANTED**.

## **CONCLUSION**

For the foregoing reasons, Defendant Life Insurance Company of North America's Motion to Dismiss **[Doc. 26]** is **GRANTED IN PART**, and **DENIED IN PART**. The Defendant's motion to dismiss Count IV of the Plaintiff's Amended Complaint is **DENIED**. The Defendant's motion to dismiss the Plaintiff's prayer for punitive damages is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** March 28, 2013.

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE